IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

WILLIAM R. SCHERER III, of behalf of himself
and all others similarly situated,

*Plaintiff*

v.

HYUNDAI CAPITAL AMERICA, INC., d/b/a
KIA FINANCE AMERICA and HYUNDAI
MOTOR FINANCE,

*Defendant.*
_____/

Case No: 22-cv-61014 WPD

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, TO DISMISS CASE WITH PREJUDICE, AND TO STRIKE CLASS ALLEGATIONS**

This lawsuit challenges Hyundai's illegal business practice of imposing hidden and excessive fees on consumers who exercised their rights to purchase their vehicles pursuant to their lease agreements.[1] At the end of Plaintiff's lease, Plaintiff attempted to purchase his 2019 Kia Soul based on the costs set forth in his lease agreement, titled as the "Florida Motor Vehicle Lease Agreement" (the "FMVLA"). Because Hyundai refused to honor that contract, forcing Plaintiff to pay additional fees, Plaintiff commenced this lawsuit. Therefore, Plaintiff's claims arise from the express terms of the FMVLA and no other contract.

The FMVLA—which does not contain an arbitration agreement—governs all issues relating to Plaintiff's lease, such as the required Consumer Leasing Act disclosures that Hyundai breached, the complete costs for leasing the vehicle, and Plaintiff's rights to purchase his vehicle at the end of lease term. *See* [Ex. 1 (FMVLA)].[2] The FMVLA does not incorporate any other contract, nor do Plaintiff's claims rely on any other agreement. Indeed, the FMVLA makes clear that the contract represents the complete agreement and constitutes the "final expression of the lease agreement . . . [that] may not be contradicted by evidence of any other prior oral leases or contemporaneous lease agreement . . . ." [*Id.* at 8].

Despite the completeness of the FMVLA, Hyundai seeks to compel arbitration based on a separate contract executed between Plaintiff and the Phil Smith Kia dealership, titled as the "Retail Lease Order" (the "RLO"). Hyundai cannot graft the RLO's arbitration agreement onto the FMVLA by relying on a general policy favoring arbitration, because "the federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate

---

[1] Hyundai Capital America, Inc., d/b/a Kia Motor Finance and Hyundai Motor Finance, is referred to in this memorandum as "Hyundai" or "Defendant."
[2] As discussed in the Complaint [D.E. 1], the Consumer Leasing Act, 15 U.S.C. § 1667, *et seq.*, requires lessors to make various financial disclosures, such as lease costs, in a "clear and conspicuous manner" within consumer leases. *See* 15 U.S.C. § 1667(a).

1

between the parties." *Bd. of Trs. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, Inc.*, 622 F.3d 1335, 1342 (11th Cir. 2010) (citation and internal quotation marks omitted). Plaintiff's claims exist independent of the RLO as the RLO merely relates to Plaintiff's order for the leased vehicle. Contrary to Hyundai's claim, the RLO acknowledges that it does not relate to or affect Plaintiff's rights within the FMVLA. *See* [Ex. 2 at 1 (RLO) ("This is an Order to lease a vehicle. **This is not the Lease Agreement**.") (emphasis added)]. Because the RLO does not apply to this dispute, the arbitration agreement contained within the RLO cannot serve as a basis to force arbitration of Plaintiff's claims under the FMVLA.

Recognizing that the FMVLA does not contain an arbitration agreement, Hyundai tries to conflate the FMVLA and RLO into a single agreement. But courts have repeatedly rejected this precise argument, holding that a party cannot compel arbitration based on a vehicle purchase order when a plaintiff's claims derive from a separate contract. *See Drayton v. Toyota Motor Credit Corp.*, 686 F. App'x 757, 759 n.2 (11th Cir. 2017); *Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263, 265 (11th Cir. 2015); *HHH Motors, LLP v. Holt*, 152 So. 3d 745, 748 (Fla. 1st DCA 2014); *Duval Motors Co. v. Rogers*, 73 So. 3d 261, 268-69 (Fla. 1st DCA 2011). Furthermore, as a non-signatory to the RLO, Hyundai cannot enforce the arbitration agreement contained in the RLO. *See Drayton*, 686 F. App'x at 758. The Court should therefore deny Hyundai's motion to compel arbitration.

Hyundai also seeks to strike the Complaint's class action allegations pursuant to Fed. R. Civ. P. 12(f) asserting the right to a class action has been waived. Since the class waiver contained within the FMVLA violates Florida public policy as a matter of law, the waiver is unenforceable. *S.D.S. Autos, Inc. v. Chrzanowski*, 976 So. 2d 600, 611 (Fla. 1st DCA 2007). Therefore, the Court should also deny Hyundai's motion to strike.

2

## ARGUMENT

**A) Hyundai Cannot Compel Arbitration Because Plaintiff's Claims Arise from the FMVLA That Does Not Contain an Arbitration Clause, and Not the Irrelevant RLO.**

Hyundai cannot compel arbitration because no agreement to arbitrate applies to Plaintiff's claims. A court cannot compel parties to arbitrate a dispute in the absence of a clear agreement to do so. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). Before the Court can compel arbitration, it must first determine whether a valid agreement to arbitrate exists. *See Mitsubishi Motors Corp. v. Soler Chrsyler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). As an initial matter, Hyundai attempts to merge two distinct legal instruments, the RLO and FMVLA, into a single contract. Hyundai hopes to import the RLO's arbitration agreement into the FMVLA because that contract does not include an arbitration agreement. This attempt to fuse two separate contracts, however, contravenes established principles of Florida contract law.[3]

Although parties may execute multiple contracts with one another, "having one contract which contains a broad arbitration agreement does not necessarily mean that arbitration can be compelled when the subject of the dispute arises from a separate contract which does not have an arbitration clause." *Klay*, 389 F.3d at 1201 (citation omitted) (refusing to compel arbitration found in a licensing contract when the dispute related to breach of a separate lease contract that did not contain an arbitration clause)). Under Florida law, when parties execute "two separate contracts and only one contract contains an arbitration clause, the parties cannot be compelled to arbitrate disputes arising from the contract that does not call for arbitration." *Lee v. All Fla. Constr. Co.*, 662 So. 2d 365, 366 (Fla. 3d DCA 1995) (citations omitted); *see also Eugene W. Kelsey & Son,*

---

[3] Because arbitration is a creature of contract, state law principles apply in determining whether Plaintiff agreed to arbitrate the present dispute. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hadden v. Univ. Acct. Servs.*, No. 18-81385-CIV, 2020 WL 7864091, at *3 (S.D. Fla. Dec. 31, 2020).

*Inc. v. Architectural Openings, Inc.*, 484 So. 2d 610, 611 (Fla. 5th DCA 1986) ("Arbitration provisions from one contract cannot be extended to a separate contract between the same parties unless the parties expressly agree to do so.") (citations omitted).

Here, Plaintiff executed two distinct contracts, the RLO and FMVLA. Each contract exists as a stand-alone contract that does not incorporate the other contract. The RLO, the only contract with an arbitration clause, relates to Plaintiff's transaction with the dealership to order the vehicle from the dealership. The RLO pertains solely to the cost of the vehicle that Plaintiff ordered, and not the total costs associated with leasing. *See* [Ex. 2 at 1]. The RLO does not govern financing of the vehicle, leasing costs, lease length, maintenance obligations, Plaintiff's right to purchase the vehicle, or any other matter related to leasing of the vehicle. To the contrary, the RLO expressly states that the FMVLA governs all issues relating to leasing of the vehicle, including leasing costs. [*Id.* at 1. ("This is an Order to lease a vehicle. **This is not the Lease Agreement**. The lease term will be contained in a Lease Agreement . . . and may require money paid at lease inception and/or a payment . . . which may vary from the amounts shown herein.") (emphasis added)]. Moreover, the RLO allows the customer to obtain his own financing. *Id.*

In contrast, the FMVLA outlines the federal Consumer Leasing Act disclosures, including all costs and monthly fees, the leasing term, and all the other rights and responsibilities of the lessor and lessee. *See generally* [Ex. 2 at 1, 2, 5, 6]. The FMVLA also creates Plaintiff's right to purchase the vehicle at the conclusion of the lease term and outlines all costs associated with that option. [*Id.* at 6]. Unlike the RLO, the FMVLA does not contain an arbitration clause, demonstrating that the parties did not intend to arbitrate any claim relating to leasing and financing of the vehicle. The FMVLA also makes clear that the FMVLA contains the entire agreement relating to the vehicle lease and does not incorporate any other agreements, including the RLO:

4

> **ENTIRE AGREEMENT**. Important. Read before signing. The terms of this Lease should be read carefully because only those terms in writing are enforceable. Terms and promises, including oral promises, are not enforceable unless they are expressly contained in this Lease. **This Lease is a final expression of the lease agreement between you and us.** This Lease may not be contradicted by evidence of any prior oral lease agreement or contemporaneous lease agreement between you and us.

[Ex. 1 at 8. (emphasis added)].

Since the FMVLA represents the complete lease agreement between the parties, the Court should reject Hyundai's attempt to fuse the RLO and FMVLA into a single agreement because it contravenes Florida law. Hyundai not only ignores Florida principles of contract interpretation, but also, fails to recognize that courts have repeatedly rejected this precise argument in near identical situations involving consumer vehicle transactions. *See Schreiber*, 634 F. App'x at 265; *Drayton*, 686 F. App'x at 759 n.2; *HHH Motors*, 152 So. 3d at 748; *Duval*, 73 So. 3d at 268-69.

For example, in *Schreiber*, the Eleventh Circuit held that a plaintiff's Consumer Leasing Act claims regarding breach of a lease agreement's vehicle purchase option—just as this case alleges—arose from the lease agreement, and not the buyer's order. *Schreiber*, 634 F. App'x at 265. The court rejected the argument that the claims relied on the purchase order because the plaintiff was "not seeking to enforce his rights under the Buyer's Order . . . [and] instead to hold [defendant] to the terms of the purchase option in the Lease Agreement." *Id*. The Eleventh Circuit has also rejected the attempt to fuse separate contracts relating to consumer vehicle transactions. In *Drayton*, Toyota claimed that because a retail buyer's order (the "RBO") and a financing agreement (the "RISC") were executed contemporaneously, the court should treat them as a single agreement and enforce the arbitration agreement contained in the RBO. Rejecting this "unavailing" argument, the Eleventh Circuit explained that the buyer's order controlled the terms of the sale between the dealership and the buyer, whereas the RISC governed financing of that vehicle.

5

*Drayton*, 686 F. App'x at 759 n.2.[4] Here, Plaintiff's claims all arise under the FMVLA, and not the RLO, because they relate to the illegal imposition of fees when Plaintiff exercised his right under the FMVLA to purchase the vehicle at the end of his lease. Plaintiff's claims do not depend on the RLO because even if the RLO ceased to exist, Plaintiff's claims would still exist.

Moreover, the presence of the merger clause within the FMVLA demonstrates that the FMVLA alone provides the basis for Plaintiff's claims. *Duval*, 73 So. 3d at 268-69. In *Duval*, the court rejected a dealership's motion to compel arbitration based on an arbitration agreement contained in a retail purchase order. Just as in this case, the financing agreement contained a merger clause that excluded all other agreements. Because the plaintiff's claims arose from the financing agreement and not the purchase order, the court concluded that the arbitration clause within the purchase order was "irrelevant to the disputes arising out of the transaction at issue" because the merger clause in the financing agreement excluded the purchase order. *Id.* at 269. Merger clauses, like the one contained in the FMVLA, reflect "the parties' intent to have the parol evidence rule applied to their contract[]." *Centennial Mortg., Inc. v. SG/SC, Ltd.*, 772 So. 2d 564, 565 (Fla. 1st DCA 2000) (citation and quotation marks omitted).[5] Since the parties intended the FMVLA to constitute the entire lease agreement and did not incorporate the RLO, the RLO's arbitration provision does not apply to this dispute.

Hyundai claims that the RLO incorporates the FMVLA because the RLO references the lease agreement. But a "mere reference to another document is not sufficient . . ." to incorporate

---

[4] "Toyota also argues that because the RBO and RISC were executed contemporaneously, they should be read as one agreement. We find this argument unavailing. The RBO lays out the terms of the sale between the dealership and the buyer while the RISC lays out the terms of the loan between the financier and the buyer."

[5] *See also Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 (Fla. 1st DCA 2005) (noting that merger clause works to prevent a party from introducing parol evidence to vary or contradict the contract); *Bulford v. Verzon Bus. Network Servs.*, 564 F. App'x 449, 452 (11th Cir. 2014)

an arbitration clause from one contract into another contract. *Phoenix Motor Co. v. Desert Diamond Players Club, Inc.*, 144 So. 3d 694, 696-97 (Fla. 4th DCA 2014) (quoting *Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc.*, 920 So. 2d 1286, 1288 (Fla. 4th DCA 2006)). More importantly, Hyundai misapprehends the importance of any reference to the FMVLA in the RLO. Because the FMVLA controls this dispute, the important inquiry is whether the FMVLA incorporates the RLO, not whether the RLO incorporates the FMVLA. Since the FMVLA does not incorporate the RLO, the RLO is irrelevant to disputes arising out of the FMVLA. *See Duval*, 73 So. 3d at 269 (holding that because the financing agreement controlled the dispute, the only relevant inquiry was whether a financing agreement referenced the buyer's order, not whether the buyer's order referenced the financing agreement). The FMVLA's merger clause also excludes the RLO regardless of whether the parties executed the RLO and FMVLA contemporaneously. *See Drayton*, 686 F. App'x at 759 n.2; *HHH Motors*, 152 So. 3d at 748. Therefore, the FMVLA exists as an independent contract from the RLO.

If Hyundai wanted to subject its lease agreements to arbitration, it could have included an arbitration clause within the FMVLA. But Hyundai chose not to do so. *See id.*[6] The Court should not permit Hyundai to reimagine Plaintiff's contracts because Hyundai now wishes to arbitrate lease agreement disputes. *See also Weiszhaar v Hampton Auto. Grp., Inc.* 2012 WL 2034783, at *1 (N.D. Fla. June 6, 2012) (denying motion to compel arbitration contained in separate purchase order based on *Duval*); *Salvagne v. Fairfield Ford, Inc.*, 794 F. Supp. 2d 826, 832 (S.D. Ohio) (2010) (holding that vehicle financing agreement was "standing alone, a fully integrated contract that by its terms was binding" and rejecting argument that terms contained in the separate purchase

---

[6] "HHH Motors is being held to the language of its own concurrently-signed documents (citation omitted). If it intended for credit buyers to be subject to the arbitration clause, then it could have said so in the [financing agreement], but did not."

order applied to the financing agreement). Therefore, the Court should deny Hyundai's motion to compel arbitration.

### B) As a Non-Signatory to Plaintiff's Contracts, Hyundai Cannot Enforce Arbitration under the RLO.

Hyundai also cannot enforce the arbitration agreement contained in the RLO as a non-signatory "to an agreement cannot enforce its terms against one who is a party . . . [because] [t]he right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1167-68 (11th Cir. 2011) (citations omitted). Whether a non-signatory such as Hyundai can force a signatory to arbitrate a dispute depends on whether any exceptions apply under state law. *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017) (citing *Lawson*, 648 F.3d at 1170-71). Hyundai misplaces its reliance on authority from other states regarding a non-signatory's power to enforce an arbitration agreement.[7] Florida courts have long held that a "a non-signatory to a contract containing an arbitration agreement cannot compel a signatory to submit to arbitration." *Rolls-Royce PLC v. Royal Caribbean Cruises LTD.*, 960 So. 2d 768, 770 (Fla. 3d DCA 2007). In fact, the Eleventh Circuit has rejected compelled arbitration in identical circumstances. *See Drayton*, 686 F. App'x 757, 758 (11th Cir. 2017) (citing *Marcus v. Fla Bagels, LLC*, 112 So. 3d 631, 633 (Fla. 4th DCA 2013); *Schreiber v. Ally Fin. Inc.*, 634 F. App'x at 265.

---

[7] For example, Hyundai relies on *Walker v. Hyundai Cap. Am., Inc.*, No. CV417-045, 2018 WL 1352173 (S.D. Ga. Mar. 15, 2018). But that court relied on Georgia law and observed that Florida law differed because Florida generally does not allow a non-signatory to compel a signatory to arbitrate a dispute. *Id. at* *3 n.4.

In *Drayton*, the plaintiff and a dealership executed a purchase order and a financing agreement. Like here, Toyota was later assigned the purchase order and relied on that interest to seek enforcement of the arbitration agreement contained in the purchase order. *Drayton*, 686 F. App'x at 758. The Eleventh Circuit refused to compel arbitration because Toyota was a non-signatory to the contract, regardless of the assignment. *Id.* Moreover, the court refused to apply the doctrine of equitable estoppel because the plaintiff did not seek to enforce to the terms of purchase order, but rather, the financing agreement. *Id.*

Just as in *Drayton*, Hyundai cannot enforce the arbitration agreement in the RLO because it is a non-signatory to the contract. Since Plaintiff's claims do not arise under the RLO, but rather, the separate FMVLA contract, equitable estoppel does not apply. *See Schreiber*, 635 F. App'x at 265 (refusing to apply equitable estoppel when plaintiff's claims arose under the lease agreement and not the purchase order). Equitable estoppel exists as a doctrine of fairness meant to prevent a party from avoiding one part of the contract, such as arbitration, while also enforcing another portion of that same contract. Thus, for the doctrine to apply, "the signatory to a written agreement containing an arbitration must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Allscipts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So. 3d 644, 646 (Fla. 3d DCA 2014), (quoting *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004) (internal quotation marks omitted)). For this reason, *Tyman v. Ford Motor Co.*, 521 F. Supp. 3d 1222 (S.D. Fla. 2021), cited by Hyundai, does not provide any guidance in the present dispute. Unlike this case, in *Tyman*, both the purchase order and financing agreement contained arbitration provisions. *Id.* at 1227. The court therefore applied equitable estoppel "because Plaintiff's claims flow[ed] from the two Agreements containing arbitration provisions." *Id.* Here,

since Plaintiff does not seek to enforce any terms of the RLO, the doctrine of equitable estoppel does not apply. Therefore, Hyundai cannot compel arbitration here.

### C) The Class Action Waiver in the FMVLA is Unenforceable Because it Violates Florida Public Policy.

Hyundai also moves, pursuant Fed. R. Civ. P. 12(f), to strike the class allegations in the Complaint based on class action waivers contained within the FMVLA and RLO.[8] Neither provision applies here.

First, class action waivers in this context violate Florida public policy as a matter of law, so such waivers are unenforceable. *S.D.S. Autos, Inc. v. Chrzanowski*, 976 So. 2d 600, 611 (Fla. 1st DCA 2007). Under Florida law, a contract provision that defeats the purpose of a remedial statute violates public policy, rendering it unenforceable. *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 474 (Fla. 2011); *Lacey v. Healthcare & Ret. Corp. of Am.*, 918 So. 2d 333, 334 (Fla. 4th DCA 2005).[9] The Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") is the quintessential remedial statute because it is "designed to protect not only the rights of litigants, but also the rights of the consuming public at large." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. 1st DCA 2000). Likewise, Congress enacted the Consumer Leasing Act as a remedial statute designed to protect consumers from deceptive leasing practices. *See Miller v. Nissan Motor Acceptance Corp.*, No. CIV. A. 99-4953, 2000 WL 175128, *4 (E.D. Pa. Feb. 15, 2000). When a

---

[8] Rule 12(f) allows a court to strike only "redundant, immaterial, impertinent, or scandalous" allegations. *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 700 (S.D. Fla. 2014). A motion to strike "is a drastic remedy, which is disfavored by the courts." *Gibons v. Lynn Univ., Inc.*, No. 20-CIV-81173-RAR, 2021 WL 1109126, at *3 (S.D. Fla. Mar. 23, 2021) (citation and internal quotations omitted). Striking class allegations is available "only if it is clear from the face of the [] complaint that this case cannot be maintained as a class action." *Jones v. Depuy Synthes Prds., Inc.*, 330 F.R.D. 298, 305 (N.D. Ala. 2018). That is not the case here.

[9] A remedial statute "confers or changes a remedy." *Blankfeld v. Richmond Health Care, Inc.*, 902 So. 2d 296, 298 (Fla. 4th DCA 2005) (citing *Campus Communs., Inc. v. Earnhardt*, 821 So. 3d 388, 396 (Fla. 5th DCA 2002).

contract provision undermines the purpose of these statutes by undercutting their effectiveness, courts will not enforce the provision. For example, a forum selection clause that required a plaintiff to bring a FDUTPA claim in a jurisdiction that limited the remedies authorized by FDUTPA was unenforceable. *Am. Online, Inc. v. Pasieka*, 870 So. 2d 170, 172 (Fla. 1st DCA 2004). Likewise, a contractual provision—like the one contained in the FMVLA—that prohibits a consumer from bringing a FDUTPA class action that challenges deceptive leasing practices violates public policy. *S.D.S. Autos, Inc.*, 976 So. 2d at 611.

In *S.D.S. Autos*, the plaintiff brought a class action under FDUTPA against a dealership for charging undisclosed fees in violation of the lease agreement. *Id.* at 602. The court invalidated the class action waiver contained within the lease agreements because "precluding class relief for small but numerous claims against motor vehicle dealers under section 501.976, Florida Statutes (2005), impermissibly frustrates the remedial purposes of FDUTPA." *Id.* at 606. The exact same situation exists here. Enforcing the class action waiver in the FMVLA would undermine the purposes of FDUTPA and the Consumer Leasing Act, requiring individual consumers to bring numerous small claims against Hyundai, a multinational corporation. This would undermine the purpose of these remedial statutes in empowering consumers to enforce not only their rights, but also, the rights of all lessees similarly injured by Hyundai's illegal leasing practices. Therefore, the class action waiver in the FMVLA violates Florida public policy and is unenforceable.[10]

Hyundai ignores Florida's critical limitation on class action waivers, and instead, relies on authority where courts enforced class actions waivers contained within arbitration agreements. This argument fails because no enforceable arbitration agreement applies in this case. *See* Sections

---

[10] While the RLO is irrelevant for the reasons established in Section A, *supra*, it should be noted that the class action waiver would be unenforceable in this case on these grounds as well.

11

A and B, *supra*. The Federal Arbitration Act ("FAA") only preempts class action waivers to the extent that the waiver invalidates an arbitration agreement. *See, e.g.*, *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1234 (11th Cir. 2012) (holding that the court would not decide whether the class action waiver violated Florida law only because the FAA applied due to the presence of an arbitration agreement); *McKenzie Check Advance of Fla., LLC v. Betts*, 112 So. 3d 1176, 1183 (Fla. 2013) (holding that court would not consider validity of a class action waiver on state law grounds when FAA applied to the facts of the case). But when the FAA does not apply—as in this case—it will not preempt state law. *See Hopkins v. World Acceptance Corp.*, 798 F. Supp. 2d 1339, 1348 (N.D. Ga. 2011) (citation omitted) (noting that states remain free to restrict class action waivers so long as they do not conflict with the FAA); *see also Jackson v. Sleek Audio, LLC*, No. 13-80725-CIV 2014 WL 1018031, at *2 (S.D. Fla. Mar. 16, 2014) (citations and internal quotation marks omitted) (noting that the FAA does not preempt the entire field of arbitration, but rather, only state laws that "prohibit[] outright arbitration of a particular type of claim.")

Similarly, the RLO's class waiver does not apply to the present dispute. As a preliminary matter, the RLO's waiver only bars class arbitration if arbitration occurs. *See* [Ex. 2 at 2].[11] Furthermore, since the RLO does not apply to Plaintiff's claims and Hyundai cannot enforce the RLO, the RLO's waiver is ineffective. Therefore, because no enforceable class action waiver in this case exists, the Court should deny Hyundai's motion to strike class allegations.

---

[11] By its own terms, the RLO's class action waiver is conditional on whether an agreement to arbitrate exists. Moreover, the RLO states that if a class action waiver is not enforceable, then the agreement to arbitrate also becomes unenforceable. [Ex. 2 at 2. ("If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.")].

### D) The Court, Not an Arbitrator, Must Decide Whether to Compel Arbitration Because No Arbitration Agreement Applies to the Dispute at Hand.

Lastly, Hyundai claims that the Court must compel arbitration because the RLO contains a delegation clause that require an arbitrator to interpret the scope of the arbitration agreement. [D.E. 16 at 9]. Before a court can enforce a delegation agreement, the court must first "ensure that the agreement was formed, **that it applies to the dispute at hand**, and that no grounds render it invalid or unenforceable." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022) (citation omitted) (emphasis added); *Granite Rock Co. v. Intl' Bd. of Teamsters*, 561 U.S. 287, 299-300 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of parties' arbitration agreement nor . . . **its applicability to the dispute is in issue**. (citation omitted)). Where a party contests either or both matters, the court must resolve the disagreement." (citation and internal quotation marks omitted) (emphasis added). Thus, a delegation clause does not allow a party to compel arbitration where no such agreement relates to the parties' dispute. Otherwise, a party could divest a court's jurisdiction and compel arbitration based on wholly inapplicable or non-existent arbitration agreements.

Hyundai's claim that an arbitrator must determine the scope of the arbitration agreement between the parties assumes that an enforceable arbitration agreement exists. As discussed in Section A and B, *supra*, no such agreement applies to the dispute at hand. The Court—and not an arbitrator—must determine this threshold issue before even considering the scope of the arbitration agreement. *See, e.g.*, *Ode v. Anheuser-Busch, LLC*, No. 4:19-CV-00233-WMR, 2020 WL 5405666, at *5 (N.D. Ga. Aug. 19, 2020) (holding that the court and not an arbitrator must determine whether plaintiffs were within the class of people subject to an arbitration agreement with a delegation clause); *Holiday Isle Owners Ass'n v. Certain Underwriters at Lloyd's London*, No. CV 21-00512-JB-B, 2022 WL 2161511, at *9 (S.D. Ala. June 15, 2022) (holding that court

13

retained jurisdiction over the threshold question of whether an arbitration agreement with a delegation clause governed the dispute because the plaintiff claimed insurer's amendment of the policy eliminated arbitration). Because the RLO does not apply to the dispute at hand, Plaintiff's challenge to the arbitration agreement relates to the existence of an applicable agreement, and not the validity of it. Similarly, Plaintiff's position that Hyundai cannot enforce the RLO as a non-signatory relates to the applicability and not the validity of the arbitration agreement. *See Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515-16 (5th Cir. 2019) (holding that question of non-signatory's power to compel arbitration, even where delegation clause existed, was for the court to decide because it constituted "a dispute over whether the parties entered into any arbitration agreement in the first place.") (citation and internal quotation marks omitted). Therefore, the Court, and not an arbitrator must decide the threshold question of whether an enforceable agreement to arbitrate applies to the present dispute.

### E) Even if the Court Compels Arbitration, the FAA Requires Staying this Lawsuit Pending Arbitration.

Even if the Court compels arbitration, the Court should not dismiss this case with prejudice because the FAA mandates that a district court "shall" stay proceedings pending arbitration upon motion by any party. 9 U.S.C. § 3; *see also Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (holding that district court erred by dismissing arbitrable claims and remanding with instructions to stay all claims pending arbitration). If the Court compels arbitration, Plaintiff will seek to stay this action. In that circumstance, the Court is "obligated to stay the case" upon Plaintiff's motion. *Donado v. MRC Express, Inc.*, No. 17-24032-CIV, 2018 WL 318473, at *4 (S.D. Fla. Jan. 4, 2018); *see also Lloyd v. Hoevensa, LLC*, 369 F.3d 253, 269 (3d Cir. 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."). Hyundai's request for dismissal

14

is also inappropriate to the extent it is sought "with prejudice." Such an order could create conflicts should an arbitrator later determine that arbitration was not applicable or that the scope of the arbitration agreement did not encompass some or all the claims at issue. In that situation, a dismissal with prejudice would unfairly and improperly divest Plaintiff of the opportunity to adjudicate his claims in court. Therefore, if the Court compels arbitration, the Court should stay the proceedings and not dismiss with prejudice.

## CONCLUSION

For the reasons stated above, the Court deny Hyundai's motion to compel arbitration, to dismiss, and to strike class allegations. Plaintiff is entitled to litigate his claims in this Court.

Respectfully submitted,

  /s/ *Cristina M. Pierson*
Cristina M. Pierson, Esquire
Florida Bar No.: 984345
cmp@kulaw.com
Matthew DellaBetta, Esquire
Florida Bar No. 1031216
mdb@kulaw.com
Kelley|Uustal
500 N. Federal Highway, Suite 200
Fort Lauderdale, Florida 33301-1103
Telephone: 954-522-6601
Facsimile: 954-522-6608

*Counsel for the Plaintiff and the Proposed Class*

## *CERTIFICATE OF SERVICE*

I hereby certify that on September 16, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants registered to receive service in this action.

Respectfully submitted,

 /s/ *Cristina M. Pierson*
Cristina Pierson