## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-61014-DIMITROULEAS/STRAUSS

**WILLIAM R. SCHERER, III,**

     Plaintiff,

v.

**HYUNDAI CAPITAL AMERICA, INC.,**

     Defendant.

_____/

### REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendant's Motion to Compel Arbitration, to Dismiss Case with Prejudice, and to Strike Class Allegations ("Motion") [DE 15]. The Motion has been referred to me, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, for appropriate disposition or report and recommendation [DE 20]. I have reviewed the Motion, the briefing thereon [DE 17, 22, 25], and the record in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 15] be **GRANTED IN PART AND DENIED IN PART**.

### BACKGROUND

On July 9, 2019, Plaintiff leased a 2019 Kia Soul ("Vehicle") from Phil Smith Kia ("Dealer"). In connection with their transaction that day, Plaintiff and Dealer entered into a Retail Lease Order ("RLO") [DE 22-2] and a Florida Motor Vehicle Lease Agreement ("FMVLA") [DE 22-1]. *See* Declaration of Nayeli Saldivar ("Saldivar Decl.") [DE 17-1] ¶¶ 9, 20. Dealer's right, title, and interest in Plaintiff's lease has been assigned to Hyundai Lease Titling Trust ("HLTT"). *See* Saldivar Decl. ¶¶ 4-5, 15-17, 21-22; *see also* Complaint ¶¶ 6, 12. Defendant is the attorney-

in-fact and exclusive servicing agent for HLTT, the initial beneficiary of HLTT, and the beneficial owner of leases/leased vehicles assigned to HLTT.  Saldivar Decl. ¶¶ 4-5; *see also* Complaint ¶¶ 6, 12.

In the Complaint, Plaintiff alleges that, prior to the expiration of his lease, he exercised an option under the FMVLA to purchase or buyout the Vehicle.  Complaint ¶¶ 18-22.  However, in doing so, Plaintiff alleges that he was forced to pay certain amounts that had not been previously disclosed and that were not permitted under the terms of the FMVLA.  *Id.* ¶¶ 23-25.  As a result, he brings three claims against Defendant: (1) Violation of Federal Consumer Leasing Act (Count I); (2) Violation of Florida Deceptive and Unfair Trade Practice Act (Count II); and (3) Breach of Contract (Count III).

According to Defendant, Plaintiff's claims are subject to an Arbitration Provision in the RLO.  The Arbitration Provision provides, *inter alia*, that "**EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL**" and that:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Additionally, the Arbitration Provision provides that it "shall survive any termination, payoff or transfer of this Order and Agreement."  Plaintiff, however, contends that he has only brought his claims under the FMVLA (not the RLO), which does not contain an arbitration provision.  As such, Plaintiff contends that his claims are not subject to the Arbitration Provision in the RLO.

**LEGAL STANDARD**

An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Federal Arbitration Act ("FAA") "creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014)). "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (citations omitted).

When a motion to compel arbitration is filed, courts generally consider the following: "(1) whether a valid agreement to arbitrate exists[;] (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Gomez v. Allied Professionals Ins. Co.*, 457 F. Supp. 3d 1351, 1356 (S.D. Fla. 2020) (citations omitted); *see also Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) ("Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." (citation omitted)).

While questions of arbitrability – gateway questions – are presumptively for the Court to decide, *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018), the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); *First Options*

*of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)).  In other words, "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Ctr.*, 561 U.S. at 68-69).

An agreement to arbitrate gateway questions is often referred to as a delegation agreement (or delegation clause or provision) because such a provision "delegates the resolution of disputes about the arbitrability of the parties' claims to an arbitrator." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022) (citing *Rent-A-Ctr.*, 561 U.S. at 68).  "A delegation agreement 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 70).  "[W]here an arbitration agreement contains a delegation provision – committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable – the courts only retain jurisdiction to review a challenge to that specific provision." *Id.* at 1303 (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015)).[1]

Nonetheless, even when a delegation provision is present, courts must still determine "at the outset" whether an agreement exists at all. *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) (citing *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019)).  Stated differently, when the making of the arbitration agreement is at issue, courts must find that the parties agreed to the arbitration agreement before referring the matter to

---

[1] *But see Attix*, 35 F.4th at 1309 n.15 ("We note, as we have said before, that our reference to jurisdiction in *Parnell* was not a reference to jurisdiction in its technical sense. We meant only to convey that whether the arbitration agreement was enforceable was a decision committed not to the court, but to the arbitrator." (internal citations and internal quotation marks omitted)).

arbitration.  *See Henry Schein*, 139 S. Ct. at 530 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Rent-A-Ctr.*, 561 U.S. at 68 ("The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" (quoting 9 U.S.C. § 4)).  After all, parties cannot delegate disputes over whether an agreement even exists between them (for the very reason that there is a dispute about whether an agreement existed in the first place).  *See Newman*, 23 F.4th at 398; *see also Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1118 (11th Cir. 2020) ("However, the Act requires a court to send threshold questions of arbitrability to an arbitrator only when the parties have agreed to do so. Because there was no contract, the aggrieved distributors have not agreed to anything with the top distributors." (internal citation omitted)); *JPay*, 904 F.3d at 929 ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (citation omitted)).  "But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  *Henry Schein*, 139 S. Ct. at 530.  Notably, the presumption of arbitrability "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Bazemore*, 827 F.3d at 1329 (quoting *Dasher*, 745 F.3d at 1116).

## ANALYSIS

Pursuant to the Motion, Defendant seeks to have the Court compel arbitration of Plaintiff's claims on an individual – as opposed to class-wide – basis, strike Plaintiff's class allegations, and dismiss this case with prejudice.  As a preliminary matter, Defendant contends that the Arbitration Provision in the RLO contains a delegation provision that the Court must enforce and that "the Court's inquiry should end here."  [DE 17] at 10.  Although Defendant was not one of the original contracting parties to the RLO (or the FMVLA), it contends that it can enforce the Arbitration

Provision as the assignee of Dealer (or, alternatively, under the doctrine of equitable estoppel), which was an original contracting party (along with Plaintiff).  To the extent the inquiry does not "end" upon consideration of the delegation provision, Defendant contends that the claims brought in this case are within the scope of the Arbitration Provision and that individual arbitration is mandated under the parties' agreement.  Plaintiff, on the other hand, contends that Defendant cannot compel arbitration because, according to Plaintiff, the claims in this case arise from the FMVLA (which does not contain an arbitration provision), not the RLO (which contains the Arbitration Provision).  For similar reasons, Plaintiff contends that the delegation provision in the RLO does not apply.  Additionally, Plaintiff disputes that Defendant is able to enforce the RLO as a nonsignatory and contends that any class action waiver is unenforceable here.  However, if the Court does compel arbitration, Plaintiff argues that this case should be stayed rather than dismissed.

As mentioned above, a court must ensure that an agreement exists before compelling arbitration – regardless of the presence of a delegation provision – because it cannot compel arbitration if no agreement exists.  In other words, an agreement must have been formed and continue to exist before a delegation provision in that agreement can be enforced.  Notably "deciding enforceability between the parties and an arbitration agreement's existence are two sides of the same coin." *Newman*, 23 F.4th at 398.  Therefore, before determining whether arbitrability issues must be delegated here, the Court must still decide whether Defendant (as opposed to Dealer) is able to enforce the Arbitration Provision.  *See id.* at 398-99; *FloaTEC, L.L.C.*, 921 F.3d at 515-16; *see also Lavigne*, 967 F.3d at 1120 n.7.  As discussed in Section A below, Defendant may enforce the Arbitration Provision against Plaintiff.

As discussed in Section B below, the delegation provision in the Arbitration Provision applies and, therefore, requires that an arbitrator decide all arbitrability issues, including whether Plaintiff's claim is within the scope of the Arbitration Provision.   "[T]he availability of class arbitration is a question of arbitrability."  *JPay*, 904 F.3d at 931, 935, 944.  Therefore, it is an issue for the arbitrator to decide in light of the parties' express delegation provision.[2]  *See id.* at 936, 939, 941.  In fact, the delegation provision renders the Court powerless to decide the availability of class arbitration.  *Id.* at 942, 944.

Because the Court should compel arbitration (for the reasons discussed in Sections A and B below), and because Plaintiff has requested that this case be stayed – rather than dismissed – if the Court compels arbitration, the Court should stay this case pending arbitration.  *See Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015) ("[S]ection 3 qualifies the mandatory nature of any stay it authorizes by requiring a party to apply for the stay: 'the court ... shall *on application of one of the parties* stay the trial.'"); *Olano v. Costco Wholesale Corp.*, No. 20-80467-CIV, 2021 WL 8894478, at *4 (S.D. Fla. Apr. 23, 2021) (Dimitrouleas, J.).

### A.  WHETHER DEFENDANT CAN ENFORCE ARBITRATION PROVISION

Defendant argues that it should be permitted to enforce the Arbitration Provision in the RLO against Plaintiff on account of the assignment.   Alternatively, Defendant contends that

---

[2] Defendant's separate request to strike Plaintiff's class allegations should be denied without prejudice.  The Court should only address the request to strike if the arbitrator finds that Plaintiff's claims in this case are not subject to the Arbitration Provision.

equitable estoppel allows it to enforce the Arbitration Provision against Plaintiff. State "law governs the issue whether a contract may be enforced by or against a nonparty." *Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014) (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631 (2009)). Here, both parties agree that Florida law applies. *Provided that the RLO was assigned*,[3] Florida law allows Defendant to enforce the Arbitration Provision against Plaintiff for the reasons discussed in Section A.1 below. Nonetheless, even if the RLO was not assigned, Defendant can enforce the Arbitration Provision thereunder against Plaintiff under the doctrine of equitable estoppel for the reasons discussed in Section A.2 below.

### 1. Enforcement of Arbitration Provision by Assignee

So long as the RLO (and not just the FMVLA) was assigned, Defendant is able to enforce the Arbitration Provision thereunder as a result of the assignment. Defendant asserts that "[b]oth the RLO and the FMVLA were assigned by [Dealer] to HLTT" citing, for evidentiary support, certain paragraphs of the Saldivar Declaration. [DE 17] at 3. The cited paragraphs from the Saldivar Declaration state that the RLO "required a separate Lease Agreement to be contemporaneously executed, which 'shall be immediately assigned by the Dealer to a bank / finance company'" and that the RLO provided that "Dealer's obligations and rights [under the RLO] may be assigned as this Order shall inure to the benefit of the Dealer, its successors and/or assigns." Saldivar Decl. ¶¶ 15, 17 (emphasis added). According to the cited paragraphs, the FMVLA then provided that "this Lease" would be assigned to HLTT and that Plaintiff acknowledged and authorized all of Dealer's right, title and interest in the FMVLA to be assigned to HLTT. *Id*. ¶¶ 21-22. Thus, the Saldivar Declaration clearly asserts that the FMVLA was to be

---

[3] I use this caveat because, as discussed below, the briefing is somewhat uncertain regarding whether both the RLO and FMVLA were assigned or whether only the FMVLA was assigned.

assigned to HLTT and indicates that the RLO <u>may be</u> assigned.  But neither the Saldivar Declaration nor the Motion make entirely clear whether the RLO was separately assigned to HLTT, whether it was assigned through operation of the assignment of the FMVLA (since the RLO "shall inure to the benefit of the Dealer, its successors and/or assigns"), or whether it was assigned through some other theory.  Plaintiff, for his part, never contends that the RLO was not assigned.  Nor does he analyze how assignment affects Defendant's ability to enforce the RLO's provisions.[4]

Based on the apparently uncontested assertion that the RLO was assigned, Defendant is able to enforce the Arbitration Provision thereunder as a result of the assignment. "Under Florida law, the assignment of a contract right does not entail the transfer of any duty to the assignee, unless the assignee assents to assume the duty." *Kong*, 750 F.3d at 1302.  However, "arbitration is a 'remedial mechanism' that is binding on an assignee" and "included in any assignment." *Id.* at 1302, 1303 (citing *Cone Constructors, Inc. v. Drummond Cmty. Bank*, 754 So. 2d 779, 780 (Fla. 1st DCA 2000)).  Therefore, "[e]ven an assignment only of contract 'rights' not entailing any duty of performance must be deemed to include the bargained-for remedial procedure." *Id.* at 1302 (quoting *Cone Constructors*, 754 So. 2d at 780).  Moreover, the term "party" – for purposes of enforcing an arbitration provision – should not be interpreted to exclude the assignee of a contracting party. *See id.*; *Marcum LLP v. Potamkin*, 107 So. 3d 1193, 1195 (Fla. 3d DCA 2013); *see also Ocwen Fin. Corp. v. Holman*, 769 So. 2d 481, 483 (Fla. 4th DCA 2000) ("We conclude

---

[4] The one instance where Plaintiff mentions assignment is in citing *Drayton v. Toyota Motor Credit Corp.*, 686 F. App'x 757, 758 (11th Cir. 2017), for the proposition that "[t]he Eleventh Circuit refused to compel arbitration because Toyota was a non-signatory to the contract, regardless of the assignment." [DE 22 at 10].  However, *Drayton* only makes passing reference to the sales contract in that case (the equivalent of the FMVLA here) being assigned without discussing or analyzing any assignment of the retail buyer's order (the analog of the RLO here).  Thus, it is not clear that the Eleventh Circuit's reasoning in *Drayton* applies here.

that Ocwen is a 'party' within the meaning of the arbitration clause because it received rights and accepted obligations under the asset purchase agreement."). Further, "under Florida law, a 'nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract.'" *Kong*, 750 F.3d at 1302 (quoting *Germann v. Age Inst. of Fla., Inc.*, 912 So. 2d 590, 592 (Fla. DCA 2005)). In fact, "Florida courts have exhibited a willingness to compel a number of different nonsignatories to arbitrate." *Id.* at 1302-03; *see also Akin Bay Co., LLC v. Von Kahle*, 180 So. 3d 1180, 1183 (Fla. 3d DCA 2015) (noting, in the context of enforcing an arbitration clause against a nonsignatory assignee, that "[a]n assignee is in no better or worse position than his assignor").

Here, there is no dispute that Defendant is Dealer's assignee (or at least the assignee's attorney-in-fact and exclusive servicing agent, among other things). The Complaint itself alleges that "the right, title, interest, and control in the Lease and the vehicle" were assigned to Defendant. Complaint ¶ 12; *see also* Complaint ¶ 6. That is precisely why Plaintiff has brought suit against Defendant and not Dealer. In *Kong*, the Eleventh Circuit found that an assignee was bound by an arbitration clause because, as noted above, "Florida law treats arbitration as a 'remedial mechanism' that is included in any assignment." 750 F.3d at 1303. Thus, it stands to reason that Defendant (as an assignee or assignee's agent) should be able to enforce the Arbitration Provision against Plaintiff, who is a signatory.[5] *See Agostino v. Ally Fin. Inc.*, No. 8:18-CV-1202-T-36TGW, 2019 WL 13142893, at *7 (M.D. Fla. Jan. 29, 2019) ("Under Florida law, Bill Curie Ford's

---

[5] *Cf. Taylor Grp., Inc. v. Indus. Distributors Int'l Co.*, 506 F. Supp. 3d 1256, 1273 (S.D. Fla. 2020) (cleaned up) ("Although federal courts generally have been willing to estop a *signatory* from avoiding arbitration with a non-signatory they have been hesitant to estop a non-signatory seeking to avoid arbitration. The distinction is not insignificant: arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate the courts have no authority to mandate that they do so." (quoting *Seth v. Rajagopalan*, No. 12-61040-CIV, 2013 WL 11927712, at *7 (S.D. Fla. Jan. 25, 2013)).

assignment of Plaintiff's account and all rights in it to Ally included the right to employ the remedial mechanism bargained for in the RISC. Ally purchased not only Agostino's account, but also the right to compel him to arbitrate his claims against it."); *Murdock v. Santander Consumer USA Inc.*, No. 2:15-CV-268-FTM-38CM, 2016 WL 11467548, at *4 (M.D. Fla. June 23, 2016), *report and recommendation adopted*, No. 2:15-CV-268-FTM-38CM, 2016 WL 3913135 (M.D. Fla. July 20, 2016) (comparing the matter to *Kong* and finding that assignee could compel arbitration where agreement identified a party as including its "successors and assigns"); *Wood v. Portfolio Recovery Assocs., LLC*, No. 8:14-CV-3044-MSS-AEP, 2015 WL 12868067, at *2 (M.D. Fla. Apr. 1, 2015) ("Under Florida law, WFNNB/Comenity's assignment of Plaintiff's account and all rights therein to Defendant included the right to employ the remedial mechanism bargained for in the cardmember agreement. Accordingly, Defendant purchased not only Plaintiff's account, but also the right to compel him to arbitrate his claims against Defendant."); *Bolanos v. First Invs. Servicing Corp.*, No. 10-23365-CIV, 2010 WL 4457347, at *2 (S.D. Fla. Oct. 29, 2010) ("[A]s the original creditor's assignee, FISC has a clear contractual right to enforce the Arbitration Agreement.").

Allowing Defendant to invoke the Arbitration Provision is especially appropriate here given the language of the parties' agreement.  In the Arbitration Provision, the contracting parties (i.e., *Plaintiff* and Dealer) agreed that the provision applied to "[a]ny claim or dispute . . . between you and us or our employees, agents, successors or assigns . . . ."  Moreover, in a separate portion of the RLO, Plaintiff agreed that "Dealer's obligations and rights [under the RLO] may be assigned as [the RLO] shall inure to the benefit of Dealer, its successors and/or assigns."  Plaintiff further agreed in the same provision that the RLO "is an essential document to any claim by [Plaintiff] against Dealer in connection with the leasing of the Vehicle."  By finding that Defendant has the

11

same rights under the Arbitration Provision that Dealer would have had by virtue of the assignment (and can therefore enforce the delegation provision thereunder), the Court would simply be enforcing the parties' agreement.

### 2.  Equitable Estoppel

To the extent the RLO was not assigned, Defendant may nonetheless enforce the RLO's Arbitration Provision under the doctrine of equitable estoppel.  Generally, "a non-signatory to a contract containing an arbitration agreement cannot compel a signatory to submit to arbitration." *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So. 3d 644, 646 (Fla. 3d DCA 2014) (quoting *Rolls–Royce PLC v. Royal Caribbean Cruises LTD.*, 960 So.2d 768, 770 (Fla. 3d DCA 2007)).  That is because "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Id.* (quoting *Seifert*, 750 So. 2d at 636.  There are certain exceptions to the general rule that a non-signatory cannot enforce an arbitration agreement. *Id.*  "Under the doctrine of equitable estoppel, for example, Florida courts have permitted a non-signatory defendant to enforce an arbitration clause against a signatory plaintiff" in two situations: "(1) 'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory'; or (2) when 'there are allegations of concerted action by both a nonsignatory and one or more of the signatories to the contract.'"  *Id.* (internal citations omitted).

Here, Defendant argues that both situations apply.  I agree that at least the first situation applies – i.e., Plaintiff must rely on the terms of the RLO in asserting his claims against Defendant. Plaintiff, not surprisingly, contends that he only needs to rely on the terms of the FMVLA, and not the terms of the RLO, in this case.  But under Florida law, reliance on a contract for equitable estoppel purposes means that a plaintiff's claims "must, at a minimum, raise some issue the

resolution of which requires reference to or construction of some portion of the contract itself." *Id.* at 647 (quoting *Rolls–Royce*, 960 So. 2d at 771).

In this case, Plaintiff's claims will require, at a minimum, reference to or construction of at least some portion of the RLO. That is precisely because of the language in the RLO – language to which Plaintiff assented as a matter of contract law.[6] As noted above, Plaintiff agreed in the RLO that the RLO "is an essential document to any claim by [Plaintiff] against Dealer in connection with the leasing of the Vehicle"[7] and that "Dealer's obligations and rights [under the RLO] may be assigned as [the RLO] shall inure to the benefit of Dealer, its successors and/or assigns." Thus, the RLO indicates that it is an "essential document" to the claims in this case, a case that involves claims asserted in connection with the leasing of the Vehicle insofar as the claims pertain to a lease-buyout option discussed in the FMVLA (the lease agreement). Additionally, Section F of the Terms and Conditions section of the RLO expressly provides that "[t]o the extent any terms [in the RLO] conflict with the terms of the Lease Agreement (except as to dollar amounts), [the RLO] shall control and govern." As such, the conclusion that Plaintiff's claims in this case will require reference to or construction of some portion of the RLO is inescapable. Therefore, even if only the FMVLA – and not the RLO – was assigned, equitable estoppel allows Defendant to enforce the Arbitration Provision against Plaintiff. *Cf. Julian v. Rollins, Inc.*, No. 8:16-CV-3092-T-30TBM, 2017 WL 495866, at \*1-3 (M.D. Fla. Feb. 7, 2017) (finding, in a similar situation, that an assignee under a Finance Agreement could enforce an

---

[6] There is no dispute regarding Plaintiff's entry into the RLO.

[7] This language distinguishes this case from *Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263 (11th Cir. 2015), on which Plaintiff relies. In fact, it is specific language like this and other language present in the RLO that distinguishes this case from several cases relied on by Plaintiff. *See infra* note 9.

arbitration provision in a Service Agreement that was not assigned because of the assignment of the Finance Agreement or alternatively under equitable estoppel).[8]

## B. DELEGATION PROVISION

In considering a delegation agreement, "[t]he essential question is whether the parties clearly and unmistakably agreed to arbitrate gateway issues of arbitrability." *Waffle House*, 866 F.3d at 1268; *see also Henry Schein*, 139 S. Ct. at 530 ("This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." (citations omitted)); *Attix*, 35 F.4th at 1295 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (quoting *First Options of Chi.*, 514 U.S. at 944)).  Under the Arbitration Provision in the RLO, Plaintiff and Dealer clearly and unmistakably agreed to delegate all arbitrability issues to an arbitrator.

As noted above, the Arbitration Provision provides that:

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

---

[8] Moreover, "[i]t is well established that the courts broadly construe arbitration provisions containing the language, 'arising out of or relating to,' such that in certain instances the clause will include non-signatories." *Cuningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc.*, 776 So. 2d 940, 942 (Fla. 3d DCA 2000) (collecting cases).  Here, the Arbitration Provision contains this broad language – "arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship."  Furthermore, the Arbitration Provision specifies that the foregoing includes "any such relationship with third parties who do not sign this Order and Agreement."  Thus, it was expressly contemplated under the RLO that certain nonsignatories would be permitted to enforce the Arbitration Provision.

Not only does this provision permit either party to elect to resolve "any" claim or dispute – arising out of *or relating to* various items (including any resulting transaction or relationship) – by arbitration, but it specifically, clearly, and unmistakably provides that any claim or dispute includes "the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute." Significantly, "any disputes means all disputes, because any means all." *Waffle House*, 866 F.3d at 1267 (quoting *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003)) (cleaned up).

Nevertheless, Plaintiff contends that the Court must decide arbitrability here because, according to Plaintiff, the Arbitration Provision does not apply "to the dispute at hand." [DE 22] at 14. In so arguing, Plaintiff relies on the following statement in *Attix*: "As with any arbitration agreement, before enforcing a delegation agreement, the court should ensure that the agreement was formed, that it applies to the dispute at hand, and that no grounds render it invalid or unenforceable." 35 F.4th at 1295 (citing *Rent-A-Ctr.*, 561 U.S. at 69). The problem with Plaintiff's reliance on the "dispute at hand" language is that Plaintiff is arguing that the Arbitration Provision does not apply to the dispute at hand (the claims in this case), not that the delegation provision does not apply to the dispute regarding who decides arbitrability when there is a dispute regarding whether claims come within the scope of the Arbitration Provision. In other words, Plaintiff essentially argues that the delegation provision does not apply because his claims in this case are outside the scope of the Arbitration Provision. Accepting such an argument would effectively render the delegation provision meaningless. It is precisely because of the delegation provision that an arbitrator – not this Court – must decide scope/arbitrability issues. Notably, because the RLO "delegates the arbitrability question to an arbitrator, [this] [C]ourt may not override the contract." *Henry Schein*, 139 S. Ct. at 529. Even if this Court were to believe that Defendant's

argument that the Arbitration Provision applies to Plaintiff's claims in this case is "wholly groundless," it still "possesses no power to decide the arbitrability issue." *Id.*  Rather, because Defendant contends that the Arbitration Provision in the RLO applies, and because the RLO contains a delegation provision that clearly and unmistakably delegates questions of arbitrability, this Court "must respect the parties' decision as embodied in the contract." *Id.* at 531.

There is perhaps one more layer to Plaintiff's delegation provision argument that needs to be addressed, however.  Plaintiff argues that "[b]ecause the RLO does not apply to the dispute at hand, Plaintiff's challenge to the arbitration agreement relates to the existence of an applicable agreement, and not the validity of it."  [DE 22] at 15.  As indicated above, before enforcing a delegation provision, courts must still ensure that the agreement containing the provision exists. But Plaintiff fails to explain why his contention goes to an issue of "existence" as opposed to arbitrability.  And his contention that the RLO does not apply to the dispute at hand plainly goes to arbitrability, not whether the agreement exists at all.  There is no dispute that Plaintiff and Dealer entered into the RLO.  Moreover, notwithstanding the parties' contemporaneous entry into the RLO and the FMVLA, the RLO clearly continued to exist based on the plain language of the RLO. In fact, Section F of the Terms and Conditions section of the RLO expressly provides that the RLO "shall survive the execution of the Lease Agreement" and that "[t]o the extent any terms [in the RLO] conflict with the terms of the Lease Agreement (except as to dollar amounts), [the RLO] shall control and govern."  Furthermore, the Arbitration Provision expressly states that "[t]his Arbitration Provision shall survive any termination, payoff or transfer of this Order and Agreement."  Thus, even if Plaintiff is correct that the claims in this case do not arise under or relate to the RLO (an issue I do not decide), that does not change the fact that Plaintiff and Dealer entered into the RLO, which continued to exist even after they entered into the FMVLA.  Because

16

the RLO was formed, continued to exist after formation of the FMVLA, and contains a valid delegation provision, an arbitrator must decide arbitrability issues in accordance with the delegation provision.[9]

## **CONCLUSION**

For the foregoing reasons, I respectfully **RECOMMEND** that the Motion [DE 15] be **GRANTED IN PART AND DENIED IN PART**, that the District Court compel arbitration (where the arbitrator shall decide all issues of arbitrability, including the availability of class arbitration), and that this case be stayed pending arbitration.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.

---

[9] In his Response [DE 22], Plaintiff places substantial reliance on four cases: (1) *Drayton v. Toyota Motor Credit Corp.*, 686 F. App'x 757 (11th Cir. 2017); (2) *Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263 (11th Cir. 2015); (3) *HHH Motors, LLP v. Holt*, 152 So. 3d 745 (Fla. 1st DCA 2014); and (4) *Duval Motors Co. v. Rogers*, 73 So. 3d 261 (Fla. 1st DCA 2011). However, none of the foregoing cases appear to have involved a delegation provision. Additionally, at least *Duval Motors* and *HHH Motors* seem to have involved situations where the court found that no agreement to arbitrate *existed*. As explained above, however, the Arbitration Provision in this case clearly continued to *exist* based on the plain language of the contract. As discussed in Sections A and B above, the language of the RLO and Arbitration Provision dictates the outcome here. Notably, there is no indication in the four cases Plaintiff relies upon that the contracts involved there contained language similar to the significant language present in the RLO and Arbitration Provision here. In that vein, my recommendation to compel arbitration does nothing more than hold Plaintiff to the language of the contract that he signed. *Cf. HHH Motors*, 152 So. 3d at 748 ("HHH Motors is being held to the language of its own concurrently-signed documents."). Lastly, I note that Defendant has correctly pointed in its Reply to other meaningful ways to distinguish Plaintiff's four main cases.

*See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

    **DONE AND SUBMITTED** in Fort Lauderdale, Florida this 22nd day of November 2022.

Jared M. Strauss
United States Magistrate Judge